IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES DEPARTMENT OF LABOR, <br><br> *Plaintiff,* <br><br> v. <br><br> SERENITY HOME HEALTH CARE LLC, et. al., <br><br> *Defendants.* | Civil Action No. 1:22-cv-803 |

## MEMORANDUM OPINION

### Introduction

The United States Department of Labor ("DOL") brings this action for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") against Defendants Serenity Home Healthcare LLC, and three related business entities (under the same name), Hildigard Ofori, the sole owner of the four companies, and Arafat Sheikhadam, the companies' general manager. Overall, the DOL seeks $872,470.21 in back pay to 145 employees, an equal amount in liquidated damages, and injunctive relief. The Court has jurisdiction over this action pursuant to Sections 16(c) and 17 of the FLSA. 29 USC §§ 216(c) and 217.

The DOL has filed a Motion for Summary Judgment on all claims against all Defendants [Doc. No. 56] ("the Motion"). The Motion has been fully briefed and a hearing was held on March 15, 2023, following which the Court took the Motion under advisement. For the reasons stated below, the Motion for Summary Judgment is granted as to DOL's claims against Defendants Ofori

1

and the Serenity entities, with appropriate injunctive relief, but denied as to Defendant Sheikhadam.

## Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

**Discussion**

Defendants Serenity Home Healthcare LLC, Serenity Home Healthcare-Norfolk LLC, Serenity Home Healthcare-Warrenton LLC, and Serenity Home Healthcare-Sterling LLC (collectively "Serenity") are limited liability corporations with their principal places of business in Woodbridge, Norfolk, Sterling, and Warrenton, Virginia respectively. [Doc. No. 51] at 2 ¶¶ 2-5 (joint statement of undisputed facts). Since at least January 16, 2019, Serenity provides home health care services in patients' homes. *Id*. at 2 ¶ 6. All the individuals listed in Schedule A, [Doc. No. 47], were employed and compensated by Serenity at some point in time from at least January 16, 2019. [Doc. No. 51] at 3 ¶ 12. The employees worked as home health aides, licensed practical nurses and registered nurses. [Doc. No. 57] at 7 ¶ 10.

Defendant Hildigard Ofori is the sole owner and administrator of the four entities that comprise Serenity. *Id*. at 8 ¶ 14. Ofori had the authority to hire and fire employees, assign work schedules, assign clients to employees, and to supervise employees who worked for Serenity. [Doc. No. 51] at 3-4 ¶¶ 13-17. Defendant Arafat Sheikhadam acted as the general manger for Serenity. [Doc. No. 57] at 8 ¶ 16.

*(1) DOL's damages claims against Defendants Ofori and the Serenity entities.*

The DOL seeks recovery of overtime pay and liquidated damages in an equal amount.

The FLSA requires employers to pay employees overtime for every hour an employee works over forty hours a week. 29 USC §§ 206(a)(1), 207(a)(1). An award of liquidated damages in an amount equal to unpaid overtime is authorized under 29 USC §216(b). It is, however, within the Court's discretion to award liquidated damages, and the Court may decline to award such damages if the employer's violation of the FLSA was made in good faith. *Mayhew v. Wells*, 125

F.3d 216, 220 (4th Cir. 1997). But the "FLSA plainly envisions that liquidated damages in an amount equal to the unpaid overtime compensation are the norm for violations of § 7 of the Act[,]" *id.* (citing 29 USC 216(b); 29 USC § 260), and there is a "plain and substantial" burden on the employer to demonstrate that the violations of the FLSA were made in good faith. *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 357 (4th Cir. 1994).

Defendants Ofori and the Serenity entities do not dispute that they failed to pay overtime as required under the FLSA.[1] *See* [Doc. No. 65] at 14 ¶ 43. The Defendants have also not argued that the violations of FLSA were made in good faith and the Defendants have not challenged in their opposition to the Motion that the violations of FLSA were "willful" for the purposes of awarding liquidated damages. In that regard, the DOL has introduced undisputed evidence that the violations were knowing and intentional. *See e.g.*, [Doc. No. 57-9] at 8, 23 (Ofori testifies both that she was aware of the overtime laws and that hours were not aggregated between locations and overtime was not paid on the total hours an employee worked). These Defendants do dispute, however, the applicable time period for which DOL may recover for overtime pay and liquidated damages.

Based on the undisputed facts and the Defendants' admissions, the Court concludes as a matter of law that Defendants failed to pay overtime pay and that their failure was willful and not

---

[1] The DOL has introduced unrebutted evidence that establish as a matter of law that the four entities that comprise Serenity constitute joint employers for the purposes of the FLSA. [Doc. No. 57] at 20-21 (explaining how Serenity split hours between different locations, billed Medicaid as a single entity, and represented itself as a single entity); *see also Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 134 (4th Cir. 2017) ("the joint employment doctrine: (1) treats a worker's employment by joint employers as 'one employment' for purposes of determining compliance with the FLSA's wage and hour requirements and (2) holds joint employers jointly and severally liable for any violations of the FLSA." (quoting *Schultz v. Commercial Interiors, Inc.*, 466 F.3d 298, 305, 307, 310 (4th Cir. 2006))). Ofori has testified, in both her individual capacity and as a corporate representative, that Serenity did not pay overtime wages to its employees. [Doc. No. 57-5] at 46, 54; *see also* [Doc. No. 51] at 3 ¶ 12. Based on these undisputed facts in the record and the admissions of the Defendants, there is no genuine dispute that Ofori and Serenity are liable for violations of the overtime provisions of the FLSA.

in good faith. Accordingly, judgment for the required overtime pay and an equal amount for liquidated damages will be entered against Defendants Serenity and Ofori in an amount, as discussed, *infra.* at 12-13.

  *2. The DOL is not entitled to summary judgment against Defendant Sheikhadam.*

  The DOL claims that Defendant Sheikhadam acted as an "employer" for the purposes of imposing liability under the FLSA. The DOL has failed to establish, however, that the undisputed facts demonstrate that she is an "employer" with liability under the statute.

  An employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 USC §203(d). To determine if an employer-employee relationship exists, an "economic reality" test is used. *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016). This test focuses on "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id*. (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). In making the determination that an individual is an employer no single factor is dispositive. *Id*.; *see also Schultz v. Commercial Interiors, Inc.*, 466 F.3d 298, 305 (4th Cir. 2006) ("the test is designed to capture the economic realities of the relationship between the worker and the putative employer[]")  (citation omitted).

  The DOL contends that Sheikhadam is an "employer" based centrally on the extent of her involvement in Serenity's overall business operations, including her management of employees, her involvement in hiring, and her authority to set the rates of pay. [Doc. No. 57] at 22. But that claim is either unsupported by admissible evidence or flatly contradicted by evidence in the record.

5

As an initial matter, Sheikhadam's title as general manager is insufficient to find that Sheikhadam is an "employer" as a matter of law. *See Acosta v. Mejia Corp.*, 2020 U.S. Dist. LEXIS 269548 at *22-23 (E.D. Va. January 21, 2020) (finding an individual who was a manager and partial owner was not an employer based on evidence of her lack of authority within the hierarchal structure of a restaurant chain). Likewise, any claim that Sheikhadam is an "employer" flies in the face of undisputed evidence that she had no legal, beneficial or equitable ownership interest in Serenity, [Doc. No. 51] at 4 ¶ 18, or participates in any generated profits as a legal or beneficial owner. [Doc. No. 65] at 12 (citing *Roley v. Nat'l Pro. Exch. Inc.*, 860 F. App'x 264, 266 (4th Cir. 2021) (per curiam) (affirming a finding that a manager with no equity interest in a company was not an employer based on the "totality of the circumstances"))[2]; *see also Rivera v. Mo's Fisherman Exch., Inc.*, 2018 U.S. Dist. LEXIS 72857 at *24 (D. Md. May 1, 2018) (finding a financial interest is a factor that can be considered in the economic realities test).

As for her specific duties and authority, while Sheikhadam testified that she could interview prospective employees, she did not testify, as the DOL argues, that she had the authority over hiring. [Doc. No. 57-10] at 4. The record also establishes that employee schedules were set by the clients, not by any individual at Serenity—including Sheikhadam. *See* [Doc. No. 57-5] at 25).[3] Similarly, the DOL cites to Ofori's deposition to argue that Sheikhadam had authority over

---

[2] The Government distances itself from *Roley* on the grounds that the case was decided based on the application of Maryland state law. But the Fourth Circuit in *Roley* recognized that the Maryland law relied on by the district court was itself based on the First Circuit's opinion in *Baystate Alternative Staffing v. Herman*, 163 F.3d 668, 678 (1st Cir. 1998) ("operational control over significant aspects of the business and an individual's ownership interests in the business... while not dispositive, are important to the analysis because they suggest that an individual controls a corporation's financial affairs and can cause the corporation to compensate (or not to compensate) employees in accordance with the FLSA.") (internal quotation and punctuation omitted). *See Roley*, 860 Fed. Appx. at 266 (quoting *Campusano v. Lusitano Constr. LLC*, 208 Md. App. 29, 39-40 (Md. 2012)).

[3] The DOL argues that Sheikhadam "represented Serenity since the Department's investigation began and facilitated the exchange of documents with Department's investigator,..." [Doc. No. 77] at 12. At oral argument, the DOL also raised Sheikhadam's involvement in the investigation as a factor the Court should consider for Summary Judgment. But when considered within the context of the record as a whole, Sheikhadam's communications with the DOL or her

setting rates of pay, *see* [Doc. No. 77] at 13, but that relied upon deposition testimony simply does not support any claim that Sheikhadam possessed the authority to set rates of pay for employees.[4]

Based on the summary judgment record, the DOL has failed to establish based on undisputed facts that Sheikhadam is an "employer" as a matter of law.[5]

*3. Injunctive relief is appropriate in this case.*

The DOL has requested that an injunction be entered against the Defendants under Section 17 of the FLSA, 29 USC §217. In opposing that request, Defendants only make the conclusory contention that the DOL has not met its burden to demonstrate that an injunction is necessary. [Doc. No. 65] at 16.

In deciding whether an injunction is appropriate, a district court should "consider (1) the employer's previous conduct; (2) its current compliance (or noncompliance) with the FLSA; and (3) the dependability of any assurances that it will comply with the Act in the future." *Sec'y of Labor, United States DOL v. Access Home Care, Inc.*, 2019 U.S. Dist. LEXIS 231687 at *13 (E.D. Va. March 20, 2019) (citing *Martin v. Funtime, Inc.*, 963 F.2d 110, 113 (6th Cir. 1992)).

Defendants Serenity and Orfori have admitted their willful violations of their obligation to pay overtime as well as their failure in violation of 29 USC §211(c) and applicable regulations to maintain records that that accurately reflect the premium pay for overtime hours.[6] *See* [Doc. No.

---

purported role in transmitting documents relevant to the investigation does little to establish as a matter of law that she was acting as the "employer."

[4] Ofori's relied upon testimony is that Sheikhadam was in a meeting to discuss the reduction of hourly rates of pay for employees, not that Sheikhadam unilaterally made the decision to reduce employees' hourly rates or had the authority to do so. *See* [Doc. No. 97-3] at 7.

[5] Based on its review of the record, it appears to the Court that the undisputed facts establish as a matter of law that Sheikhadam is *not* an "employer" for the purposes of the FLSA. Nevertheless, before considering *sua sponte* whether summary judgment should be entered in her favor, the Court will give the DOL an opportunity to address that issue. *See* Fed. R. Civ. P. 56(f).

[6] Defendants do contend that the records accurately record the number of hours the employees worked. [Doc. No. 65] at 5 ¶ 39.

57-5] at 54 (In Ofori's deposition, "Q. Is there an overtime policy for Serenity? A. The only thing we have is that we don't pay overtime."); *see also* 29 CFR § 516.2(9) (employee records must include "Total premium pay for overtime hours.") The DOL has also presented evidence that Serenity took steps to conceal their failure to pay overtime wages and in that regard, has represented, without challenge, that based on its review of Defendants' records, Serenity, in an attempt to appear in compliance with their obligation to pay overtime, has manipulated its employees' rates of pay so that the total amount paid to an employee remains the same as it was when they were not paying overtime. *See e.g.*, [Doc. No. 57-17] (an example of an employee payroll with changing pay rates). Further, the DOL argues that the harm from an injunction to the Defendants is minimal because an injunction only requires the Defendant to comply with the law and there is a strong public interest in having employees compensated properly under the law. Based on all the facts and circumstances presented, the Court finds that an injunction is warranted to prevent further violations of the FLSA.[7]

*4. The applicable period for which damages may be awarded as the tolling agreement is not enforceable.*

The parties dispute the applicable period for which DOL can recover overtime pay and liquidated damages. That issue revolves around the enforceability *vel non* of a tolling provision in a Tolling Agreement the parties signed on May 17, 2022, [Doc. No. 57-7], which tolled the applicable statute of limitations for the seven-month period (210 days) from November 14, 2021 through June 14, 2022. Accordingly, DOL claims damages for the period beginning January 16,

---

[7] The Defendants have also argued that it would be inappropriate for the Court to enter an injunction against Defendant Ofori in light of her applications for bankruptcy. The scope of the injunction that will issue will comply with the applicable bankruptcy stay, as discussed in Subsection 6, *infra*.

2019, which would include an additional seven months beyond the otherwise applicable three-year period beginning July 15, 2019 (three years before the filing of the Complaint). Defendants contend that DOL breached the Tolling Agreement by filing suit on July 15, 2022, long before the expiration of the 210 day period referenced in Paragraph 5 of the Tolling Agreement, as measured from the date of its execution, May 17, 2022, *id*. at 3 ¶ 5, and therefore may not recover damages based on its provisions.[8]

The Parties' dispute on the Tolling Agreement revolves around the interpretation of the last sentence of Paragraph 5 which states, "the Secretary agrees not to institute any further legal proceedings against the undersigned employers under the FLSA, as a result of findings made in this investigation, on or before **210 days**." [Doc. No. 57-7] at 2 (emphasis in original).

The DOL equates this reference to "210 days" to the 210 day period identified in Paragraph 4, which is the length of time the statute of limitations is tolled between November 14, 2021 and June 14, 2022. [Doc. No. 77] at 16. Since the Tolling Agreement was signed on May 17, 2022, the DOL essentially contends that it only agreed not to file suit for another 28 days. The Defendants read this reference to "210 days" to mean that the DOL will not institute a new proceeding for 210 days from the signing of the Tolling Agreement on May 17, 2022 and based on that reading, contend that the DOL breached the 210 day provision within Paragraph 5 by filing this action on July 15, 2022, only 60 days from the date of the Tolling Agreement. [Doc. No. 65] at 15. Accordingly, the Defendants believe that the statute of limitations only allows the DOL to recover

---

[8] Defendants also contend that Sheikhadam never signed the Tolling Agreement and is therefore not enforceable as to her, a contention the Court does not consider given its rulings.

9

damages for the period beginning on July 15, 2019, i.e., three years before the action was filed.

*Id.*[9]

>The following three paragraphs of the Tolling Agreement bear on this disputed issue:
>
>4. The Secretary and the undersigned employers agree that the time period beginning on **11/14/2021**, until and including **6/14/2022** ("the tolling period") will not be included in computing the time limit by any statute of limitations... Any legal proceedings brought by the Secretary or affected employees during the tolling period shall be deemed to have been filed on **11/14/2021**. Any such legal proceedings brought by the Secretary or affected employees after **6/14/2022** shall be deemed to have been filed **210 days** prior to the actual filing date.
>5. In exchange for the undersigned employers agreeing to the tolling period addressed in this Agreement, the Secretary agrees not to institute any further proceedings against the undersigned employers under the FLSA, as a result of findings made in this investigation, on or before **210 days**.
>...
>8. Nothing in this Agreement shall preclude the Secretary from asserting any claim or filing any documents in any bankruptcy case relating to the undersigned employers, from filing any petition to enforce an administrative subpoena, or from taking such legal action relating to the undersigned employers or any other party as he deems appropriate, except to the extent that he agrees to refrain from instituting legal proceedings for back wages and/or liquidated damages against the Employers under the FLSA as a result of findings made in this investigation, in accordance with paragraph 5 above.

[Doc. No. 57-7] (emphasis in original).

---

[9] The DOL argues that the Defendants have waived any statute of limitations defense by not specifically raising the statute of limitations as an enumerated affirmative defense in the Answer. [Doc. No. 77] at 15. The DOL relies on *Erilini Co. S.A. v. Johnson*, in which the Fourth Circuit found that it was inappropriate for a district court to *sua sponte* raise a statute of limitations defense and that the failure of a defendant in a civil case to raise the defense effectively waived the statute of limitations. 440 F.3d 648, 657 (4th Cir. 2006) (citations omitted). However, as the DOL notes, the Defendants do refer to the statute of limitations in the Answer, *see* [Doc. No. 14] at 3, and although the Answer references a two-year statute of limitations not related to the tolling agreement, there is still a clear invocation of a statute of limitations defense in the Defendants' pleading. Further, the Opposition to the Motion for Summary Judgment unequivocally raises the argument for applying the statute of limitations in relation to the tolling agreement. [Doc. No. 65] at 11. In the present case, as the Defendants have identified an intent to raise a statute of limitations defense in both the Answer and the Opposition to Summary Judgment, the Court finds that the Defendants have not waived any defense based on statute of limitations. For this reason, the Court will consider the Defendants' argument on the merits.

The Tolling Agreement is a contract and as such, Virginia contract law[10] will govern its construction and interpretation. *See Osman v. Youngs Healthcare, Inc.*, 2023 U.S. Dist. LEXIS 26169 at *17 (E.D. Va. February 15, 2023) (applying *James v. Circuit City Stores*, 370 F.3d 417, 421-422 (4th Cir. 2004), to hold that private contract interpretation is a question of state law and to find that a tolling agreement signed with the Department of Labor is interpreted under Virginia law)). Under applicable Virginia contract law, contract interpretation is governed by the Parties' intent as expressed in the plain language of the contract, when that language is unambiguous. *See James*, 370 F.3d at 422 (citing *Golding v. Floyd*, 261 Va. 190, 192 (Va. 2001)). A contract is "ambiguous when it is subject to multiple interpretations in view of the entire contractual context." *James River Insurance Company v. Doswell Truck Stop, LLC*, 297 Va. 304, 306 (Va. 2019).

Paragraph 5 does not specifically state the date from which the 210 day period is calculated; and while "210 days" is referenced in both Paragraph 4 and 5, Paragraph 5 does not state specifically that the 210 day period during which the DOL is prohibited from filing suit is the same retroactive 210 day period that applies for the purposes of calculating the limitations period. Moreover, there is nothing that would necessarily suggest such a reading, and a more natural

---

[10] Although it is unclear where the contract was made based on the last act for contract execution, Defendants have asserted without challenge that Virginia law applies. *See* [Doc. No. 65] at 15. Based on the record, the Court finds it appropriate to apply Virginia law to resolve the ambiguity in the Tolling Agreement. In that regard, the Defendants are all located in Virginia, Defendants signed the Tolling Agreement in Virginia, the tolling period at issue forestalled conduct that was to take place in Virginia, *viz*., the filing of an enforcement action, related to and the conduct and damages to be adjudicated in this action is based on events that occurred in Virginia. *See Best Med. Int'l v. Tata Elxsi Ltd.*, 2011 U.S. Dist. LEXIS 134247 at *9-10 (E.D. Va. November 21, 2011) ("Under Virginia's choice of law rules, the interpretation, validity, and enforceability of a contract are generally determined by the law of the state where the contract is made. However, if the contract is to be performed in another place, then the law of the place where the contract is to be performed governs.") (citations omitted). In addition, Virginia law would also likely apply under general conflict of law principles. *See also* RESTATEMENT (Second) of Conflict of Laws §188 (1971) (rights and duties of parties with respect to an issue in contract are determined by the law of the state "with the most significant relationship to the transaction" and by taking into account "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.")

reading is that the DOL is prohibited from filing suit for 210 days from signing of the Tolling Agreement on May 17, 2022, particularly given Paragraph 8's prohibition on new proceedings as contemplated in Paragraph 5. Nevertheless, when considered in its entirety, the Tolling Agreement is arguably ambiguous, as each party's position is supported by what could be viewed as a reasonable competing interpretation of Paragraph 5, and the Court will rely on familiar canons of contract interpretation to resolve the issue.

The DOL contends that parole evidence resolves in its favor any ambiguity, and at oral argument the DOL pointed to correspondence between the Parties. But that correspondence only discusses scheduling and the extension of the tolling period. *See* [Doc. No. 77-5]. There is no reference in these messages to Paragraph 5 of the Tolling Agreement, and only a brief isolated and unclear reference to the effect of the agreement on the contemplated tolling period.[11] For this reason, parole evidence does not resolve any ambiguity in the contract in favor of one party over the other; and as such the Court resorts to other principles of contract interpretation. In that regard, "[i]f the plain meaning is undiscoverable, Virginia courts apply the contra proferentem canon, which construes ambiguities against the drafter of the ambiguous language." *Erie Insurance Exch. v. EPC MD 15, LLC*, 822 S.E.2d 351, 355 (Va. 2019) (*ref.*, *TravCo Ins. Co. v. Ward*, 284 Va. 547, 553 (Va. 2012)). The correspondence by the DOL indicates that the DOL was the drafter of Paragraph 5. *See* [Doc. No. 77-5]. For this reason, the Court will adopt Defendants' interpretation; and because the DOL brought suit within the 210 days period prohibited by the Tolling Agreement, as the Court has determined it should be read, the DOL is therefore in breach of the agreement and

---

[11] The only references to the Tolling Agreement in the e-mail correspondence identified as parole evidence by the DOL at oral argument is investigator Tyrone White's e-mail message, which states, "I have attached the original signed tolling agreement, an additional tolling extended 30 days (6/14/22) that requires a signature,..." and attorney David Dabbs' response, "I attached a signed tolling agreement, as mentioned below." [Doc. No. 77-5] at 1, 3.

the Defendants are liable for damages only for the three-year statutory period preceding the filing of the Complaint on July 15, 2022.

*5. The appropriate measure of damages.*

The DOL has submitted the declaration of Michael Christian in support of its claimed compensatory damages from July 15, 2019 to July 15, 2022 in the amount of $723,761.40. *See* [Doc. No. 57-22]. Defendants have not challenged the computation of damages; and after a review of the Government's submission, the Court finds that the estimation of damages is reasonable and sufficiently based on a reliable methodology. *See Martin v. Deiriggi*, 985 F.2d 129, 132 (4th Cir. 1992) ("the Secretary need only produce evidence sufficient to show 'as a just and reasonable inference' the amount and extent of work for which employees were not compensated adequately." (quoting *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687 (U.S. 1946))). For this reason, the Court finds that the Government is entitled to compensatory damages from the liable Defendants, jointly and severally, in the amount of $723,761.40, and for an equal amount of liquidated damages, for a total amount of $1,447,522.80.

*6. Defendants Ofori's and Sheikhadam's bankruptcy petition.*

Defendants Ofori and Sheikhadam have both filed a Notice of Bankruptcy. [Doc. No. 80]; [Doc. No. 81]. At the Court's request, the Parties have filed memoranda detailing how the Court should proceed. For the reasons outlined below, the Court finds it is appropriate to decide, and issue an Order on, the current Motion of Summary Judgment, but not enter a final judgment for enforcement of any monetary penalty at this time.

Under the Bankruptcy Code, once a debtor files for bankruptcy there is an automatic stay of a creditor's actions that may impact the bankruptcy estate. 11 U.S.C. §362(a). However, the

13

bankruptcy code provides for an exception for the Government's enforcement of civil actions pursuant to its regulatory authority. 11 U.S.C. §362(b)(4) (exempting from the stay a governmental organization exercising its regulatory power). As in this case, the Government's enforcement of statutory overtime laws is an exercise of the Department of Labor's police authority. *See Acosta v. JM Osaka, Inc.*, 2017 U.S. Dist. LEXIS 227950 at *5 (E.D. Va. September 15, 2017) ("circuit decisions in closely analogous contexts make clear that an action brought by the Secretary of Labor seeking back pay and wages owed to workers under the FLSA is an exercise of the police power.") For this reason, the Court will enter judgment against Defendant Ofori as the Government's action in this case is exempt from the automatic stay in the bankruptcy code. However, the Government will be directed to refrain from executing on that judgment unless leave is obtained from the bankruptcy court. *See Acosta*, 2017 U.S. Dist. LEXIS 227950 at *7 ("To avoid the disruption that might ensure as the government and other creditors pursue the bankruptcy estate's limited assets, the Secretary of Labor and the employees may seek and obtain judgments, but must refrain from executing on their judgments unless permitted by the bankruptcy process.")

An injunction to prevent future violations of the FLSA also will not affect the assets of Ofori's bankruptcy estate. As the Government points out, such an injunction only requires the Defendants to comply with laws they are already required to comply with. The equitable relief that will issue in this case will only enjoin future violations of the FLSA and will not allow for the immediate enforcement of the monetary judgment against the Defendants.

## Conclusion

For the above reasons, it is hereby

ORDERED that the Motion for Summary Judgment, [Doc. No. 56], be, and the same hereby is, GRANTED IN PART and DENIED IN PART. The Motion for Summary Judgment is GRANTED to the extent that judgment will be entered as a matter of law against Defendants Hildigard Ofori, Serenity Home Healthcare LLC, Serenity Home Healthcare- Norfolk LLC, Serenity Home Healthcare- Warrenton LLC, Serenity Home Healthcare- Sterling LLC, jointly and severally, for compensatory damages in the amount of $723,761.40 for the period July 15, 2019 to July 15, 2022, and an equal amount in liquidated damages, for a total award of $1,447,522.80; and the Motion is DENIED as to the claims against Defendant Arafat Sheikhadam; it is further

ORDERED that the Department of Labor not execute on any entered judgments without the consent of the United States Bankruptcy Court; it is further

ORDERED that the Department of Labor is directed to file within 30 days any opposition to the Court's entering summary judgment in favor of Defendant Sheikhadam; and it is further

ORDERED that the liable Defendants shall be enjoined as detailed in the Order that will issue with this Memorandum Opinion.

The Clerk is directed to forward copies of this Order to all counsel of record.

Anthony J. Trenga
Senior U.S. District Judge

July 14, 2023
Alexandria, Virginia